UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-61120-RAR

**RUDOLPH SILAS**,

    Petitioner,

v.

**RICKY D. DIXON, SECRETARY,
FLORIDA DEPARTMENT OF CORRECTIONS**,

    Respondent.
_____/

**ORDER DENYING 28 U.S.C. § 2254 HABEAS PETITION**

**THIS CAUSE** comes before the Court on a *pro se* Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2254, challenging Petitioner's convictions and sentences imposed by the Seventeenth Judicial Circuit Court in and for Broward County, Florida, in Case No. 18-003099-CF10A.  *See* Petition [ECF No. 1] ("Pet."). Respondent filed a Response to the Petition.  *See* Response to Order to Show Cause [ECF No. 8] ("Resp."). Having carefully reviewed the record and governing law, and for the reasons set forth below, the Court **DENIES** the Petition in its entirety.

**PROCEDURAL HISTORY**

The State of Florida charged Petitioner and a codefendant by Information with four counts: burglary of a conveyance (Count 1), carjacking (Count 2), robbery with aggravated battery (Count 3), and aggravated battery with a deadly weapon (Count 4). *See* Information [ECF No. 9-1] at 7–9. On December 13, 2018, a Broward County jury found Petitioner guilty of all four counts as charged in the Information. *See* Verdict [ECF No. 9-1] at 11–14. Prior to sentencing, the trial court vacated Petitioner's conviction on Count 4 after the State conceded that it violated the rule

against double jeopardy. *See* Order Vacating Count 4 [ECF No. 9-1] at 16; Sentencing Tr. [ECF No. 10-5] at 16 ("[The Court]: Count IV is dismissed by the court because it would constitute double jeopardy to sentence him on that count as well."). The trial court adjudicated Petitioner guilty of Counts 1 through 3 and sentenced him to life in prison. *See* Judgment and Sentencing Orders [ECF No. 9-1] at 18–29.

Petitioner appealed his convictions and sentences to Florida's Fourth District Court of Appeal (the "Fourth DCA"). *See* Direct Appeal Notice of Appeal [ECF No. 9-1] at 36. Petitioner argued on appeal that: (1) the trial court "should have granted [Petitioner's motion for judgment of acquittal] where there was insufficient evidence to establish that [Petitioner] was a principal to the crimes committed[,]" and (2) "[t]he trial court erred when it admitted evidence of a suggestive show-up identification of [Petitioner]." Direct Appeal Initial Brief [ECF No. 9-1] at 51. On March 26, 2020, the Fourth DCA summarily affirmed the trial court in an unwritten opinion. *See Silas v. State*, 292 So. 3d 1181 (Fla. 4th DCA 2020).

On April 4, 2021,[1] Petitioner, now proceeding *pro se*, filed a motion for postconviction relief in state court pursuant to FED. R. CRIM. P. 3.850. *See* Postconviction Motion [ECF No. 9-1] at 106–24. Petitioner raised three grounds for relief in his Postconviction Motion: (1) "[t]rial counsel rendered ineffective assistance of counsel when he misadvised the defendant about his need to testify in this case[,]" *id.* at 112; (2) "[t]rial counsel rendered ineffective assistance of counsel when he misadvised the defendant regarding a favorable plea offer[,]" *id.* at 116; and (3) "the cumulative effect of such errors denied the defendant a fair and impartial trial," *id.* at 120. On October 28, 2022, the state postconviction court rendered an order denying all three grounds.

---

[1] "Under the 'prison mailbox rule,' a pro se prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009). "Absent evidence to the contrary, [courts] assume that a prisoner delivered a filing to prison authorities on the date that he signed it." *Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014).

*See* Order Denying Postconviction Motion [ECF No. 9-1] at 137–39. Petitioner appealed the denial of his Postconviction Motion, *see* Postconviction Notice of Appeal [ECF No. 9-1] at 144, but the Fourth DCA again affirmed the lower court in an unwritten opinion, *see Silas v. State*, 360 So. 3d 386 (Fla. 4th DCA 2023). The Fourth DCA's mandate issued on May 26, 2023. *See* Postconviction Mandate [ECF No. 9-1] at 163. The instant habeas petition was filed in this Court on June 6, 2023. *See* Pet. at 1.

## STANDARD OF REVIEW

### A. Review Under 28 U.S.C. § 2254

"As amended by [the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")], 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Some of the more restrictive limits are found in § 2254(d). Under that provision, a federal court may grant habeas relief from a state court judgment only if the state court's decision on the merits was (1) contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Consequently, § 2254(d) constructs a "highly deferential standard for evaluating state-court rulings" because, after all, this standard "demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

"A state court's decision is 'contrary to' federal law if the 'state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Consalvo v. Sec'y, Fla. Dep't of Corr.*, 664 F.3d 842, 844 (11th Cir. 2011) (quoting

*Williams v. Taylor*, 529 U.S. 362, 412–13 (2000)) (brackets omitted).  A state court's decision qualifies as "an unreasonable application of federal law if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* (quoting *Williams*, 529 U.S. at 413) (cleaned up). "'If this standard [seems] difficult to meet'—and it is—'that is because it was meant to be.'" *Burt v. Titlow*, 571 U.S. 12, 20 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)).

By its own plain terms, § 2254(d)'s deferential standard applies only when a claim "was adjudicated on the merits in State court proceedings[.]" 28 U.S.C. § 2254(d); *see also Cullen*, 563 U.S. at 181 ("If an application includes a claim that has been adjudicated on the merits in State court proceedings, § 2254(d), an additional restriction applies."); *Cone v. Bell*, 556 U.S. 449, 472 (2009) ("Because the Tennessee courts did not reach the merits of Cone's *Brady* claim, federal habeas review is not subject to the deferential standard that applies under AEDPA.").  The summary denial of a claim with no articulated reasons presumptively serves as an adjudication on the merits subjecting the claim to § 2254(d)'s additional restrictions.  *See Richter*, 562 U.S. at 100 ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").  This is because federal courts ordinarily presume § 2254(d)'s deferential standard applies when a constitutional claim has been presented to a state court and denied in that forum.  *See, e.g.*, *id.* at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

At the same time, "federal court[s] should 'look through' [an] unexplained decision to the last related state-court decision that *does* provide a relevant rationale" if one exists.  *See Wilson v.*

*Sellers*, 138 S. Ct. 1188, 1192 (2018) (emphasis added).  From there, federal courts "presume that the unexplained decision adopted the same reasoning." *Id.*  "[T]he State may rebut [that] presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed." *Id.*

In addition to the standard of review imposed by AEDPA, the petitioner must also show that any constitutional error had a "substantial and injurious effect or influence" on the verdict to be entitled to habeas relief.  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).  The Supreme Court has explained that, while the passage of AEDPA "announced certain new conditions to [habeas] relief," it did not supersede or replace the harmless error standard announced in *Brecht*.  *Brown v. Davenport*, 142 S. Ct. 1510, 1524 (2022).  In other words, a habeas petitioner must <u>also</u> satisfy *Brecht*, even if AEDPA applies.  *See id.* ("[A] federal court must *deny* relief to a state habeas petitioner who fails to satisfy either [*Brecht*] or AEDPA.  But to *grant* relief, a court must find that the petition has cleared both tests.") (emphasis in original); *see also Mansfield v. Sec'y, Dep't of Corr.*, 679 F.3d 1301, 1307 (11th Cir. 2012) ("[A] habeas petition cannot be successful unless it satisfies both [AEDPA] and *Brecht*.").

### B.  *Ineffective Assistance of Counsel Claims*

The Sixth Amendment affords a criminal defendant the right to "the Assistance of Counsel for his defen[s]e."  U.S. Const. amend. VI.  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  To prevail on a claim of ineffective assistance of counsel, a habeas litigant must demonstrate "that (1) his counsel's performance was deficient and

'fell below an objective standard of reasonableness,' and (2) the deficient performance prejudiced his defense." *Raleigh v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 938, 957 (11th Cir. 2016) (quoting *Strickland*, 466 U.S. at 687–88).

Regarding the deficiency prong, "a petitioner must establish that no competent counsel would have taken the action that his counsel did take" during the proceedings. *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc). If "some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial[,]" counsel did not perform deficiently. *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (quoting *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992)).

As for the second prong, "a defendant is prejudiced by his counsel's deficient performance if 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Porter v. McCollum*, 558 U.S. 30, 40 (2009) (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

## ANALYSIS

Petitioner raises three grounds for relief in his § 2254 petition—the same three grounds that were originally presented in Petitioner's Postconviction Motion. *See* Petition Attachment ("Attach.") [ECF No. 1-1] at 1–4.[2] To recap, Petitioner alleges that: (1) trial counsel misadvised

---

[2] Respondent correctly observes that the Petition "did not fully set out the issues" and instead "deferred to attachments, which only provide the first page of each issue that was raised in state court." Resp. at 7. The Court agrees with Respondent that the Petition, by itself, falls far short of the pleading standard required by AEDPA. *See Blankenship v. Hall*, 542 F.3d 1253, 1270 (11th Cir. 2008) ("It is the petitioner's burden to establish his right to habeas relief and he must prove all facts necessary to show a constitutional violation."). That said, the Court finds that the Petition's attachments are identical to portions of Petitioner's Postconviction Motion. *Compare* Attach. at 2–4, *with* Postconviction Motion [ECF No. 9-1] at 112, 116, and 120. The Court will assume, then, that the Petition is fully incorporating all of the factual allegations and legal arguments Petitioner made in his Postconviction Motion.

him about his right to testify; (2) trial counsel gave "incompetent" advice which led Petitioner to reject the State's favorable plea offer; and (3) the cumulative effect of these errors denied Petitioner a fair trial. *See id.* Respondent concedes that the Petition was timely filed, and that Petitioner properly exhausted his claims in state court. *See* Resp. at 7. Consequently, the Court will apply the standard of review set forth in 28 U.S.C. § 2254(d) to Petitioner's claims, which requires the Court to review the reasonableness of "the last state court to decide [Petitioner's] federal claim[s] . . . on the merits in a reasoned opinion." *Wilson*, 138 S. Ct. at 1192.

Here, the Fourth DCA issued an unwritten opinion that did not "provide a relevant rationale," so the Court will instead "look through the unexplained decision to the last related state-court decision that [provided] a relevant rationale." *Id.* In this case, that "last related state-court decision" is the state postconviction court's order denying Petitioner's Postconviction Motion. *See* Order Denying Postconviction Motion [ECF No. 9-1] at 137–39. The Court will analyze each of Petitioner's grounds for relief in turn.

### A. Ground One

In Ground One, Petitioner argues that his trial counsel "misadvised the defendant about his need to testify in this case." Attach. at 2. According to Petitioner, his attorney (incorrectly) informed Petitioner that "because [Petitioner] had 'prior felonies' on his record, him testifying would reveal those prior felonies to the jury," and that Petitioner's testimony "was not needed because the State did not fulfill their burden of proving each and every element of the charged offenses[.]" Postconviction Motion [ECF No. 9-1] at 114. Petitioner explains that, if defense counsel had not given this "erroneous" advice, he would have testified at trial that "he did not have any planned connection [sic] with the [codefendant]," "that he never attempted to forcibly remove any property from the possession of the victim and picked up the laptop off the ground," and that

he never did "any act to incite, cause, advise, encourage, or assist [the codefendant] to commit the crime[.]" *Id.* at 114–15. The Respondent contends that counsel's advice was accurate and proper, and that, in any event, the record shows that Petitioner's decision not to testify was knowing and voluntary since the trial court held a lengthy colloquy with Petitioner about his right to testify. *See* Resp. at 16–18.

Every criminal defendant has "the right to ultimately choose whether or not to testify" but his or her defense counsel also "bears the primary responsibility for advising the defendant of his right to testify or not to testify, the strategic implications of each choice, and that it is ultimately for the defendant himself to decide." *United States v. Teague*, 953 F.2d 1525, 1532–33 (11th Cir. 1992) (en banc). Counsel can be ineffective for violating a defendant's right to testify if they "refuse[ ] to accept the defendant's decision to testify," "never inform[ ] the defendant of his right to testify," or "fail[ ] to discuss the strategic implications of testifying or not testifying[.]" *Gallego v. United States*, 174 F.3d 1196, 1197 (11th Cir. 1999). However, under *Strickland*, relief cannot be granted unless the habeas petitioner also shows that, had counsel provided accurate advice, the petitioner would have testified at trial and that "there was a reasonable probability . . . his testimony would have led to a different outcome in the case." *Topete v. United States*, 628 F. App'x 1028, 1029 (11th Cir. 2015) (citing *Strickland*, 466 U.S. at 697); *see also Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1130 (11th Cir. 2012) ("In short, Morris has not demonstrated a reasonable probability that his sentence would have been different had he testified during the penalty phase of the trial.").

Ground One is easily refuted by the record since Petitioner, his lawyer, and the trial court extensively discussed Petitioner's right to testify and the risks and benefits of testifying at trial. At

the close of the State's case-in-chief, the trial court asked defense counsel whether Petitioner intended to testify:

> [Defense Counsel]: Judge, I—Judge, I have spoken to Mr. Silas. Explained to him his options. And consequences—potential consequences of his options to testify or not to testify. I explained to him that he has a right not to testify. Of course that if he does choose to testify, it's his right, I cannot stop him. It will be subject to cross examination of course and among other things he may be impeached with prior felony convictions[.]
>
> [. . . .]
>
> [The Court]: Has Mr. Silas made a decision whether he is testifying?
>
> [Defense Counsel]: Yes, Judge. After discussing with him, and I advised him, I want to put on the record that he should not take the witness stand, and [Petitioner] does not wish to take the witness stand.

Trial Tr. [ECF No. 10-3] at 74–75. The record here confirms Petitioner's claim that his defense counsel advised him not to testify because he would be "impeached with prior felony convictions." *Id.* at 74.[3] The problem for Petitioner is that counsel's advice was accurate: if Petitioner had chosen to testify, the State would have been able to attack his credibility by asking him about "the existence of prior [felony] convictions and the number of convictions." *Fotopoulos v. State*, 608 So. 2d 784, 791 (Fla. 1992) (citing Fla. Stat. § 90.610(1)). And this would have been a big problem for Petitioner because he had <u>ten prior felony convictions</u> at the time of his trial. *See* Trial Tr. [ECF No. 10-3] at 76–77. Counsel's advice, then, was not only accurate, but also very reasonable

---

[3] In his Postconviction Motion, Petitioner alleges counsel <u>actually</u> said that, if he testified, the State would be able to "go into" the details of his prior convictions—which might have been inaccurate advice. *See* Postconviction Motion [ECF No. 9-1] at 114; *see, e.g.*, *Rodriguez v. State*, 761 So. 2d 381, 383 (Fla. 2d DCA 2000) ("When the witness admits his or her convictions, a trial court errs by allowing the State to question the witness about the specific convictions."). But the trial transcript conclusively refutes Petitioner's interpretation of counsel's advice, and, in any event, the trial court correctly informed Petitioner that the State only "gets to ask you how many felony convictions you have" (and not the details of each conviction). Trial Tr. [ECF No. 10-3] at 76.

since Petitioner's status as a ten-time convicted felon would have eviscerated his credibility in front of the jury. *See Teague*, 953 F.2d at 1533 n.9 ("There are good tactical reasons why it may not be best for the defendant to testify in some circumstances. Some examples might be if . . . the defendant <u>might be prejudiced by revelation of prior convictions</u>[.]" (emphasis added)); *Stepp v. Jones*, No. 16-CV-25170, 2018 WL 9439863, at *8 (S.D. Fla. Aug. 29, 2018) ("In any event, it is not unreasonable to advise a defendant against testifying to keep prior convictions away from the jury.").[4]

Not satisfied with counsel's representations, the trial court also held a sworn colloquy with Petitioner to ensure that Petitioner understood the extent of his right to testify and that Petitioner was knowingly and voluntarily waiving his right to do so:

> The Court: And I understand that your attorney has advised you not to testify. While certainly I would expect you to give great weight to his recommendation, you do understand that the decision is yours and yours alone, he can only advise you on that; do you understand that?
>
> Mr. Silas: Yes, sir.
>
> The Court: And have you had sufficient time to discuss that decision with your attorney?
>
> Mr. Silas: Yes, sir.
>
> The Court: And it is your wish not to be a witness in the case?
>
> Mr. Silas: Yes, sir.

---

[4] Petitioner also claims that counsel incorrectly stated that Petitioner's testimony was "not needed" because "the State did not fulfill their burden of proving each and every element of the charged offenses[.]" Postconviction Motion [ECF No. 9-1] at 114. The Court agrees with Respondent that this argument is meritless since Petitioner chose not to testify <u>after</u> the trial court denied Petitioner's motion for judgment of acquittal and concluded that the State had produced sufficient evidence that Petitioner "participat[ed] as a principal." Trial Tr. [ECF No. 10-3] at 72.

Trial Tr. [ECF No. 10-3] at 77.  The Eleventh Circuit has repeatedly held that "on-the-record waiver[s]" of a defendant's right to testify are meant to "nip these post-conviction issues in the bud," since a waiver will refute a defendant's post hoc claim that he was misinformed about his or her right to testify.  *United States v. Anderson*, 1 F.4th 1244, 1258 (11th Cir. 2021); *see also, e.g.*, *Marquez v. United States*, 684 F. App'x 843, 866 (11th Cir. 2017) ("[T]he record conclusively refutes Marquez's allegation that counsel deprived him of his right to testify, . . . Marquez told the district court during trial that he had, in fact, decided not to testify after he had discussed his rights and options with counsel[.]").

The record here is conclusive.  Defense counsel properly advised Petitioner about his right to testify and accurately appraised the risks of doing so.  Petitioner then knowingly and voluntarily waived his right to counsel after being fully informed by both defense counsel and the trial court.  *See* Trial Tr. [ECF No. 10-3] at 74–77.  The Court finds that the state postconviction court's decision was reasonable and **DENIES** Ground One.

### B.  Ground Two

Petitioner alleges in Ground Two that defense counsel rendered "incompetent advice" during the plea bargaining stage, which led to Petitioner rejecting a favorable plea offer from the State.  *See* Attach. at 3.  Petitioner explains in his Postconviction Motion that the State had offered him a 16-year sentence followed by 5-year term of probation if Petitioner agreed to testify against his codefendant.  *See* Postconviction Motion [ECF No. 9-1] at 116.  When asked about the plea offer, counsel purportedly told Petitioner that "the State's case against him was weak" and that the offer was "extremely harsh especially in light of the fact that it requires the defendant to snitch."  *Id.* at 116–17.  Petitioner insists that this unreasonable advice is what caused him to reject the plea.

*See id.* at 118. In response, Respondent insists that there is no evidence that Petitioner would have accepted the State's 16-year offer since Petitioner "presented a counteroffer." Resp. at 22.

A defense attorney has the duty "to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *United States v. Smith*, 983 F.3d 1213, 1220 (11th Cir. 2020) (quoting *Missouri v. Frye*, 566 U.S. 134, 145 (2012)). If a habeas petitioner alleges that counsel has performed deficiently during the plea-bargaining stage, he or she must "show a reasonable probability that but for counsel's ineffectiveness: (1) 'the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances)'; (2) 'the court would have accepted its terms'; and (3) 'the conviction or sentence, or both, . . . would have been less severe than under the judgment and sentence that in fact were imposed.'" *Osley v. United States*, 751 F.3d 1214, 1222 (11th Cir. 2014) (quoting *Lafler v. Cooper*, 566 U.S. 156, 164 (2012)).

Even assuming that counsel told Petitioner that (1) the State's case was "weak," and (2) the State's offer was "extremely harsh," the state court could reasonably conclude that this was not deficient performance under *Strickland*. Counsel's estimation that the State's case was "weak"—along with the attendant implication that Petitioner's chances of success at trial were strong—was not unreasonable advice. *See Lafler*, 566 U.S. at 174 ("[A]n erroneous strategic prediction about the outcome of the trial is not necessarily deficient performance."); *Teers v. United States*, 739 F. App'x 960, 966–67 (11th Cir. 2018) ("[T]here is a difference between expressing optimism about a defendant's chances at trial and guaranteeing that the defendant will win."). Petitioner's claim that counsel called the plea offer "extremely harsh" also rings hollow to the Court, considering that counsel himself informed Petitioner (on the record) that—if he was

Page **12** of **15**

found guilty at trial—he would be classified as a "habitual offender" and face "a mandatory life sentence." Trial Tr. [ECF No. 10-1] at 182. Suffice to say, Petitioner was aware that the State's 16-year offer was not "extremely harsh" in comparison to the possibility of a mandatory life sentence.

In addition, the record confirms that Petitioner was unwilling to accept the State's 16-year offer. During calendar call, defense counsel confirmed that he "ran by [Petitioner] the State's plea offer" and, when presented with this offer, Petitioner instead proposed a counteroffer of "seven years [in] Florida state prison, followed by five years of probation." Calendar Call Tr. [ECF No. 10-6] at 4. The State rejected this counteroffer. *See id.* The state court reasonably concluded that Petitioner's decision to reject the State's 16-year offer and respond with a (much) lower counteroffer was proof that Petitioner had no desire or intention of ever accepting the 16-year plea offer, no matter what counsel's advice was. *See Gissendaner v. Seaboldt*, 735 F.3d 1311, 1319 (11th Cir. 2013) ("A willingness to accept [a counteroffer] more favorable than what is offered does not indicate a willingness to accept what is offered."); *Permenter v. Sec'y, Fla. Dep't of Corr.*, No. 3:17-CV-813, 2019 WL 5268802, at *9 (M.D. Fla. Oct. 17, 2019) ("Counsel's performance did not affect the outcome of the plea process as evidenced by Petitioner's decision to make the counter offer."). The record, in short, suggests that Petitioner could not have been prejudiced by counsel's advice since he would not have accepted the State's plea offer. *See Osley*, 751 F.3d at 1222. For these reasons, Ground Two is **DENIED**.

### C. Ground Three

Finally, in Ground Three, Petitioner claims that the "cumulative effect of such errors denied the defendant a fair and impartial trial[.]" Attach. at 4. However, since Petitioner has failed to establish in Grounds One and Two that any error occurred, his cumulative error claim necessarily

fails. *See Morris*, 677 F.3d at 1132 ("This Court has made clear that where there is no error in any of the trial court's rulings, the argument that cumulative trial error requires that this Court reverse the defendant's convictions is without merit." (cleaned up)). Ground Three is thus **DENIED**.

## EVIDENTIARY HEARING

No evidentiary hearing is warranted in this matter. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the [state court] record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").

## CERTIFICATE OF APPEALABILITY

After careful consideration of the record in this case, the Court declines to issue a certificate of appealability ("COA"). A habeas petitioner has no absolute entitlement to appeal a district court's final order denying his habeas petition. Rather, to pursue an appeal, a petitioner must obtain a COA. *See* 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180, 183 (2009).

Issuance of a COA is appropriate only if a litigant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To do so, litigants must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). And "[w]here a district court has disposed of claims . . . on procedural grounds, a COA will be granted only if the court concludes that 'jurists of reason' would find it debatable both 'whether the petition states a valid claim of the denial of a constitutional right' and 'whether the district court was correct in its procedural ruling.'" *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001) (quoting *Franklin v. Hightower*, 215 F.3d 1196, 1199 (11th Cir. 2000)).

Here, reasonable jurists would not debate the Court's decision to deny the Petition on its merits. Accordingly, a COA will **NOT ISSUE**.

## CONCLUSION

Having carefully reviewed the record and governing law, it is hereby

**ORDERED AND ADJUDGED** that the Petition [ECF No. 1] is **DENIED**. Any request for a certificate of appealability is **DENIED**, and an evidentiary hearing is **DENIED**. All deadlines are **TERMINATED**, and any pending motions are **DENIED** as moot. The Clerk is directed to **CLOSE** the case.

**DONE AND ORDERED** in Miami, Florida, this 10th day of August, 2023.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**

cc:    Counsel of record

Rudolph Silas
DC # 654456
Everglades Correctional Institution
Inmate Mail/Parcels
1599 SW 187th Avenue
Miami, FL 33194
PRO SE